Honorable Edward G. Holm Prosecuting Attorney Thurston County Courthouse 2000 Lakeridge Drive SW, Bldg. 2 Olympia, WA 98502
 Honorable Gary Alexander State Representative, 20th District P.O. Box 40600 Olympia, WA 98504-0600
 Dear Prosecutor Holm and Representative Alexander:
By letter previously acknowledged, you have requested our opinion on the following questions:
1. If the governing body of a public facilities district (PFD) created before July 31, 2002, causes construction to be commenced on a regional center before January 1, 2004, thus meeting the requirements set forth in RCW 82.14.390 for collecting a sales and use tax, may additional projects that the PFD lawfully selects and causes to be commenced by the district after January 1, 2004, continue to collect the tax authorized by RCW 82.14.390
if the original regional center commenced prior to January 1, 2004, is no longer allocated any of the sales and use tax previously collected under RCW 82.14.390?
2. Would the interlocal agreements which contemplate the creation of more than one regional center that would commence construction after January 1, 2004, have an effect on the answer to this question?
[original page 2] BRIEF ANSWER
A PFD may allocate properly collected sales and use tax revenue to one or more qualified regional centers as it determines, provided that doing so is consistent with interlocal agreements governing the PFD.
BACKGROUND
In June 2002, Thurston County and the cities of Lacey, Olympia, and Tumwater entered into an interlocal agreement to create the Capitol Area Regional Public Facilities District for a regional center. This 2002 Agreement stated that the participating local governments would jointly identify a possible regional center for construction and operation.
In March 2003, the parties amended the 2002 Interlocal Agreement (Amended Interlocal Agreement Regarding Creation of a Public Facilities District for Regional Centers, dated March 10, 2003 ("2003 Amended Agreement")). The primary purposes of the amendment were to identify two regional centers to be constructed by the PFD and to allocate the PFD's funds between the two regional centers.
One of the regional centers identified in the 2003 Amended Agreement is the Lacey Area Athletic, Recreation, and Special Events Complex. The Lacey Complex was to be funded in part by PFD sales and use tax. In addition, Lacey and Thurston County were to contribute funds and land for the complex.
The other regional center identified in the 2003 Amended Agreement was the Capital Area Arts and Conference Center. The Arts and Conference Center was to be funded by PFD sales and use tax, plus funding provided by the city of Olympia.
The 2003 Amended Agreement stated that the PFD would impose a 0.033 percent sales and use tax and allocate that tax as follows: To help finance the Lacey Complex, the city of Lacey would receive 100 percent of the tax collected in its boundaries and 50 percent of the tax collected in the boundaries of Tumwater and unincorporated Thurston County. To help finance the Arts and Conference Center, the city of Olympia would receive 100 percent of the tax collected within the boundaries of Olympia and 50 percent of the taxes collected in the boundaries of Tumwater and unincorporated Thurston County. In addition, the PFD agreed to impose additional taxes and charges if directed by the cities or county. The PFD agreed to enter into two interlocal agreements, one with Lacey and one with Olympia, that would govern financing, construction, ownership, and operation of the two regional centers.
In response to the 2003 amendments to the interlocal agreement, litigation was commenced against the Capital Area PFD. At the time of the litigation, the Capital Area PFD planned to commence construction on the Lacey Complex prior to January 1, 2004, and planned to commence construction of the Capital Area Arts and Conference Center prior to January 1, 2005. One issue raised in the litigation was whether the Capital Area PFD was required by applicable statutes to commence construction of both regional centers prior to January 1, 2004, in [original page 3] order to contribute the 0.033 percent sales and use tax to partially fund both centers. The court held that the PFD need commence construction of only a single regional center prior to January 1, 2004, in order to use the sales and use tax to finance additional centers commenced after January 1, 2004. The pertinent section of the superior court order states:
 [e]ach individual PFD need commence construction of only a single regional center to be eligible for full regional center financing, including financing of additional regional centers where construction did not commence until after January 1, 2004.
Order Granting PFD Defendants' Motion for Summary Judgment,Public Funds v. State, Thurston County Superior Court, No. 03-2-01922-1, filed November 26, 2003.
The information you provided states that construction on the Lacey Complex commenced prior to January 1, 2004. You also state that the PFD and city of Olympia decided to no longer pursue construction of the Arts and Conference Center. Currently, the governing board of the PFD is considering alternatives for allocating PFD funds given that there will be no Arts and Conference Center to which to allocate a portion of the PFD sales and use tax. You state that it is possible the PFD will decide to stop allocating sales tax to the Lacey Complex in the future and to allocate all sales and use tax revenue to one or two alternative projects.
ANALYSIS
1. If the governing body of a PFD created before July 31, 2002, causes construction to be commenced on a regional center before January 1, 2004, thus meeting the requirements set forth in RCW82.14.390 for collecting a sales and use tax, may additional projects that the PFD lawfully selects and causes to be commenced by the district after January 1, 2004, continue to collect the tax authorized by RCW 82.14.390 if the original regional center commenced prior to January 1, 2004, is no longer allocated any of the sales and use tax previously collected under RCW 82.14.390?
There are two types of PFDs. Initially, the Legislature authorized counties to establish PFDs. See generally RCW36.100. In 1999, the Legislature authorized certain cities and towns to establish PFDs as well. Laws of 1999, ch. 165. Finally, in 2002, the Legislature authorized cities and towns to join with counties to create and operate a PFD under certain circumstances. Laws of 2002, ch. 363, § 1.[1] PFDs established (in whole or in part) by cities or towns are governed by RCW 35.57. To create this type of PFD, participating cities and counties must enter an interlocal agreement under RCW 39.34. RCW35.57.010(1)(c).
In general, PFDs governed by RCW 35.57 have the authority "to acquire, construct, own, remodel, maintain, equip, reequip, repair, finance, and operate one or more regional centers."[original page 4] RCW 35.57.020(1). A "regional center" means a convention, conference, or special events center, or any combination of facilities, and related parking facilities, serving a regional population, constructed at a cost of at least ten million dollars. Id. A "special events center," as that term is used in RCW 35.57.020(1), means a facility, available to the public, used for community or sporting events, trade shows, and artistic, musical, theatrical, or other cultural exhibitions. A regional center is conclusively presumed to serve a regional population if state and local government invest at least ten million dollars. Id.[2]
Under RCW 35.57, a PFD may finance a regional center in a number of ways. The PFD may issue bonds, request voter approval for sales and use tax, levy a tax on admission charges to a regional center, and impose charges and fees or accept gifts and grants. RCW 35.57.020(3), (4), .030, .040, .100.
Of particular interest here is the 1999 law that authorized a PFD, without voter approval, to impose a sales and use tax that does not exceed 0.033 percent of a "taxable event." In reality, this is not an additional tax but rather a pre-existing tax imposed by the state. The 1999 law allows a PFD to retain this portion of the sales and use tax instead of transmitting that portion of the tax to the state. To qualify for this tax revenue, a PFD must meet certain deadlines for creating the PFD and commencing construction of a regional center.
RCW 82.14.390 is the authority for this tax and provides in pertinent part as follows:
 (1) Except as provided in subsection (6) of this section, the governing body of a public facilities district created before July 31, 2002, under chapter 35.57 or 36.100 RCW that commences construction of a new regional center, or improvement or rehabilitation of an existing new regional center, before January 1, 2004, may impose a sales and use tax in accordance with the terms of this chapter. The tax is in addition to other taxes authorized by law and shall be collected from those persons who are taxable by the state under chapters 82.08 and 82.12 RCW upon the occurrence of any taxable event within the public facilities district. The rate of tax shall not exceed 0.033 percent of the selling price in the case of a sales tax or value of the article used in the case of a use tax.
 (2) The tax imposed under subsection (1) of this section shall be deducted from the amount of tax otherwise required to be collected or paid over to the department of revenue under chapter 82.08 or 82.12 RCW. The department of revenue shall perform the collection of such taxes on behalf of the county at no cost to the public facilities district.
 [original page 5] (3) No tax may be collected under this section before August 1, 2000. The tax imposed in this section shall expire when the bonds issued for the construction of the regional center and related parking facilities are retired, but not more than twenty-five years after the tax is first collected.
(4) Moneys collected under this section shall only be used forthe purposes set forth in RCW 35.57.020 and must be matched with an amount from other public or private sources equal to thirty-three percent of the amount collected under this section, provided that amounts generated from nonvoter approved taxes authorized under chapter 35.57 RCW or nonvoter approved taxes authorized under chapter 36.100 RCW shall not constitute a public or private source.
RCW 82.14.390(1)-(4) (emphasis added).
Thus, a PFD that was created before July 31, 2002, and commenced construction of a new (or improvement of an existing) regional center prior to January 1, 2004, may retain a portion of the state sales and use tax and spend that tax revenue for the purposes set forth in RCW 35.57.020.
Your question is whether the Capital Area PFD would comply with RCW 82.14.390 if it commences construction on one regional center prior to January 1, 2004, but subsequently ceases to provide PFD sales and use tax funding to that regional center and shifts the tax revenue to a different regional center which the PFD had neither selected nor commenced prior to January 1, 2004.
As we see it, this question has three parts, which we address separately. The first question is whether the PFD may construct more than one regional center if construction has commenced on only one regional center prior to January 1, 2004. RCW35.57.020(1) expressly authorizes a PFD "to acquire, construct, own, remodel, maintain, equip, reequip, repair, finance, and operate one or more regional centers." (Emphasis added.) It is therefore clearly within legislative intent for a PFD created under RCW 35.57 to own, construct, or operate more than one regional center.
The second question is whether the PFD may apply the 0.033 percent sales and use tax to an additional regional center if construction on that particular regional center had not commenced prior to January 1, 2004. RCW 82.14.390, the statute authorizing the sales and use tax, is ambiguous on this point. One section of RCW 82.14.390, subsection (1), authorizes a PFD that commences construction of "a" new regional center prior to January 1, 2004, to impose the sales and use tax. "A" can be construed as a reference to one, but not all, of a PFD's regional centers. One interpretation is therefore that RCW 82.14.390(1) requires only that one regional center, but not all regional centers, be commenced prior to January 1, 2004, to apply the sales and use tax to any regional center of the PFD.
On the other hand, subsection (3) of RCW 82.14.390 states "[t]he tax imposed in this section shall expire when the bonds issued for the construction of the regional center and related[original page 6] parking facilities are retired, but not more than twenty-five years after the tax is first collected." The phrase "the regional center" in subsection (3) could be construed as a limit on the phrase "commences construction of a. . . regional center . . . by January 1, 2004" in RCW82.14.390(1). Under this interpretation, the sales and use tax may be used only to make payments relating to "the" specific regional center commenced by January 1, 2004, for which bonds have been issued.[3]
Your opinion request informs us, however, that this issue was raised and ruled upon by a superior court in litigation involving the Capital Area PFD. At the time of the litigation in 2003, the Capital Area PFD planned to commence construction on the Lacey Complex prior to January 1, 2004, and planned to commence construction of the Capital Area Arts and Conference Center prior to January 1, 2005. One issue raised in the litigation was whether the Capital Area PFD was required to commence construction of both regional centers prior to January 1, 2004, in order to contribute the sales and use tax to partially fund both centers. The court held that the PFD need commence construction of only a single regional center prior to January 1, 2004, in order to use the sales and use tax to finance additional centers commenced after January 1, 2004. As noted above, the pertinent section of the superior court order states:
 [e]ach individual PFD need commence construction of only a single regional center to be eligible for full regional center financing, including financing of additional regional centers where construction did not commence until after January 1, 2004.
Order Granting PFD Defendants' Motion for Summary Judgment,Public Funds v. State, Thurston County Superior Court, No. 03-2-01922-1, filed November 26, 2003.
As we understand it, after reviewing the court's order and the arguments made in the litigation, the court resolved the ambiguity in the context of the Capital Area PFD by concluding that the sales and use tax authorized by RCW 82.14.390 can be used on another regional center, so long as the Capital Area PFD commenced construction on one regional center prior to January 1, 2004. As a final judgment, the superior court's ruling resolves this issue with respect to the Capital Area PFD.[4]
That brings us to the third part of your question — whether the Capital Area PFD is authorized to shift the sales tax funding away from the original regional center (the Lacey [original page7] Complex) to an alternative regional center that has not yet been selected. We answer this question in the affirmative.
RCW 82.14.390, the statute that authorizes the 0.033 percent tax, contains no clear statement that funding of multiple regional centers must occur simultaneously (as contemplated in the 2003 Amended Agreement), rather than consecutively, as the PFD is currently contemplating. Thus, for example, we find nothing in the statute that would preclude the PFD from applying sales tax revenue to one regional center for four years, and then to a different regional center for ensuing years. RCW82.14.390(4) requires PFDs to obtain other funding sources in addition to sales tax revenue. In other words, funding from other sources is necessary, and there is nothing in the statute that requires that the sales tax must be applied to the original regional center until its construction is complete.
This answer assumes that all other requirements of RCW82.14.390 are met. For example, subsection (3) addresses the length of time the tax may be imposed. This aspect of RCW82.14.390 was not addressed by the superior court and is not at issue here. However, if the Capital Area PFD has not issued bonds, it would appear that the PFD may impose the tax for at most 25 years.
2. Would the interlocal agreements which contemplate the creation of more than one regional center that would commence construction after January 1, 2004, have an effect on the answer to this question?
As we understand this question, you ask whether the interlocal agreements establishing the Capital Area PFD would affect the answer to question 1. We answer that question as follows.
Under RCW 35.57.010, city/county-created PFDs are creatures of interlocal agreement. A PFD must act within the authority granted by RCW 35.57 and RCW 82.14.390. It must also act within the authority granted it by the participating cities and county. Thus, the cities and county must agree in the interlocal agreement on the scope of PFD authority on such issues as whether there will be more than one regional center, what regional centers will be acquired, and whether multiple regional centers may be financed by shifting tax revenue away from one regional center to a newly designated regional center. Therefore, the answer to your question is yes, since the PFD must act within the authority granted in the interlocal agreement.
However, interlocal agreements, like other types of agreements, may be amended. We find nothing in RCW 35.57 or RCW 82.14.390
that would preclude the participating cities and county from amending the interlocal agreement after January 1, 2004, so long as the amended agreement is consistent with statutory limits on the PFD's authority. For example, the 2003 Amended Agreement expressly addresses methods for amending certain provisions of the agreement.[5]
 [original page 8] In addition, another possible effect of the interlocal agreement between the PFD and Lacey is that the agreement authorizes Lacey to pledge the PFD tax revenue to make bond payments. If Lacey has pledged the tax revenue to pay bonds, the bond covenants likely would not allow shifting that revenue to another facility. It would be necessary to review the bond covenants to determine whether the PFD is allowed to stop allocating revenue to Lacey.
In conclusion, the PFD must act not only within the authority of RCW 35.57 and 82.14.390 but also within the authority of the interlocal agreements or amendments thereto with regard to the selection of an alternative regional center.
We trust that the foregoing will be useful to you.
 ROB MCKENNA Attorney General
 JEAN M. WILKINSON Senior Counsel
[1] Cities, towns, and counties may create a PFD only if the population of each county that participates is less than one million. In addition, a county may participate in a PFD only if it is contiguous with, or contains, the cities and towns participating in the PFD. RCW 35.57.010.
[2] We can express no opinion as to whether any of the projects under consideration by the Capital Area PFD would in fact qualify as a "regional center" as that term is defined in RCW35.57.020(1). As we understand the superior court litigation, the court did not address such issues as, for example, the cost of the Lacey Complex, nor could the court have addressed the alternative proposed regional centers that subsequently have been proposed by cities participating in the PFD.
[3] This Office issued an informal opinion to Senator Betti Sheldon, dated May 28, 2003, concluding that RCW 82.14.390
authorizes spending sales and use tax only for the purpose of repaying bonds issued by a county PFD (created under RCW 36.100) for the specific "regional center" whose construction or rehabilitation triggers the statute, and if a county PFD wants to undertake additional projects, it must finance them with funds other than the sales and use tax.
[4] The authority of the Attorney General's Office to provide opinions on legal questions does not extend to re-examining questions that already have been adjudicated as to a party whose actions are the subject of the opinion request. As the foregoing analysis suggests, however, the governing statutes leave room for more than one conclusion with respect to the issue determined by the superior court. This ambiguity may be appropriate for consideration and clarification by the Legislature.
[5] Paragraph 14 of the 2003 Amended Agreement states that after January 1, 2005, the allocation of sales tax proceeds may be revised under certain circumstances. Paragraph 9 states that the parties will work in good faith to amend the agreement as necessary to facilitate an alternative regional center.